FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

98 JUN 30 PM 5: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JOHN WHITT, JR., | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV 98-N-0214-W |
| | ] | |
| CONTEMPORARY MITSUBISHI, et al. | ] | |
| | ] | |
| Defendant(s). | ] | |

ENTERED
JUN 30 1998

## MEMORANDUM OF OPINION

### I. Introduction.

In this Federal Truth in Lending action, the Court currently has for consideration the April 17, 1998, and May 11, 1998 motions to compel arbitration and for stay of proceedings, filed by defendants Contemporary Mitsubishi and Mitsubishi Motors (collectively referred herein as "Contemporary Mitsubishi"), and Consumer Portfolio Services ("CPS"), respectively. The plaintiff initially responded to the defendants' motion on April 28, 1998, and argued that, while the arbitration agreement at issue involves interstate commerce and is otherwise broad enough to encompass the plaintiffs' claims, the arbitration agreement is unenforceable pursuant to Alabama's Mini-Code. *See Response in Opposition to Defendants' Motion to Compel Arbitration*, at 1-3 (non-paginated) (citing ALA. CODE § 5-19-6(b)). Specifically, the plaintiff claim that the defendants failed to provide Mr. Whitt with a copy of the executed arbitration agreement, thus rendering the agreement invalid under Alabama Code section 5-19-19(c), which provides that any violations of the Mini-Code

17

(where no specific remedy is set forth) will result in the creditor being unable to enforce the offending portion of the credit transaction. *See id.* at 2 (citing ALA. CODE § 5-19-19(c)).

Because of the novel nature of the issue, the Court conducted a hearing on the motions to compel arbitration on May 14, 1998, and received evidence on the defendants' alleged non-compliance with Alabama Code section 5-19-6(b). Subsequent to the hearing, the Court required the parties to submit further briefing on the issues, which the Court has received. Accordingly, the motions to compel arbitration are ripe for decision. Upon due consideration, the motions will be granted.

## II.     Discussion.

Section 2 of the Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (1998). The effect of section 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration. *See* 9 U.S.C.A. § 3 (1998). Section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. *See* 9 U.S.C.A. § 4 (1998).

Whether an arbitration provision is enforceable, as opposed to the merits of the underlying dispute, is a question for the court. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985); *Kelly v. Merrill Lynch, Pierce, Fenner*

2

& Smith, Inc., 985 F.2d 1067 (11th Cir. 1993). In enacting the FAA, Congress manifested a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S. Ct. 1647, 114 L. Ed.2d 26 (quoting *Moses H. Cone*, 460 U.S. at 24). The Act's purpose "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to *place arbitration agreements upon the same footing as other contracts.*" *Id.* at 24 (emphasis added).

In their respective motions to compel arbitration, the defendants contend, in part, that because Mr. Whitt signed the arbitration agreement, the agreement is valid, irrevocable and enforceable. *See, e.g., Brief in Support of Consumer Portfolio Services, Inc.'s Motion to Compel Arbitration,* at 3. As a matter of contract law, the Court agrees that because Mr. Whitt signed the arbitration agreement, he is ordinarily bound by the terms of it. *See Green Tree Agency v. White*, No. 1962094, 1962095, 1998 WL 290176, at *1 (Ala. June 5, 1998) ("[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby") (quoting *Power Equipment Co. v. First Alabama Bank*, 585 So. 2d 1291, 1296 (Ala.1991)).

However, assuming the arbitration agreement is otherwise valid under Alabama contract law, the plaintiff argues in opposition to the enforceability of the arbitration agreement that, because he was not provided a copy of the arbitration agreement at the time of his consumer credit transaction, the defendants violated the Alabama Mini-Code, thus rendering the arbitration agreement unenforceable. *See Response in Opposition to*

3

*Defendants' Motion to Compel Arbitration*, at 2. The plaintiff relies upon Alabama Code sections 5-19-6(a) & 5-19-19(c), which provide the following:

> Any creditor, when extending credit with respect to a consumer credit transaction, other than under an open-end credit plan, *shall at that time furnish to the debtor a copy of each instrument executed by the debtor in connection with the consumer credit transaction.*
>
> . . .
>
> [A]ny *provision* of a *consumer credit transaction* which *violates* this chapter *shall be unenforceable by the creditor to the extent, but only to the extent, of the violation*, and the other remaining provisions and agreements shall be enforceable and shall not be void and shall not be affected by the violation. Except as provided in subsection (a), any *creditor* who fails to comply with any *requirement* imposed under this chapter with respect to any person *is liable to the person only for the actual economic damages sustained by the person as a result of the failure*. . . .

Ala. Code § 5-19-19(c) (1996)(emphasis added).

The plaintiff argues that the arbitration agreement is a "provision of [the] consumer credit transaction which violates" the Mini-Code, while the defendants contend that their failure to provide a copy of the arbitration contract pursuant to the Mini-Code is a "requirement" that arguably was not satisfied. How these statutory terms–"provision" and "requirement"--are interpreted dictates whether the arbitration agreement is deemed valid and, important to the result reached here, whether defendants' motions should be granted or denied.

The two sentences of § 5-19-19(c) define *two* potential remedies for violations of the Mini-Code. As quoted *supra*, the first sentence provides that a "provision" which violates the Mini-Code shall be unenforceable to the extent, but only to the extent, of the violation. The plain language of the first sentence limits it to situations where a "provision" violates

4

the Mini-Code. As defendant CPS points out in its brief, the Mini-Code does not place any restrictions on the *language* of alternative dispute resolution agreements, so there exists no situation where a generic arbitration "provision" would violate the Mini-Code. *See Brief in Support of Consumer Portfolio Services, Inc.'s Motion to Compel Arbitration*, at 8. Therefore, the first sentence is wholly inapplicable to this issue presently before the Court.

The second sentence of section 5-19-19(c) provides a remedy for a *creditor's* failure to comply with a "requirement" of the Mini-Code. The Mini-Code does, however, place "requirements" on creditors which arguably apply to a document containing an arbitration provision. Specifically, section 5-19-6(a) of the Code of Alabama provides:

> Any *creditor*, when extending credit with respect to a consumer credit transaction, other than under an open-end credit plan, *shall at that time furnish to the debtor a copy of each instrument executed by the debtor in connection with the consumer credit transaction.* . . .

Ala. Code 5-19-6(a) (emphasis added).

The plain language of this section imposes a "requirement" on a "creditor," and nothing in this portion of the statute imposes any restriction on the language of a "provision." Therefore, the remedy for a creditor's failure to comply with this "requirement" is provided by the second sentence of section 5-19-19(c), which provides the remedy for a creditor's failure to comply with a requirement of the Mini-Code.

Indeed, a fundamental rule of statutory construction requires a court to presume that the legislature means what it says in a statute.[1] *See McCullar v. Universal Writers Life Ins.*

---

[1] Under Alabama law, words in a statute should be given their natural, plain, ordinary, and commonly understood meaning. *See Alabama Farm Bureau Mutual Cas. Ins. Co. v. City of Hartselle*, 460 So. 2d 1219 (Ala. 1984).

*Co.*, 687 So. 2d 156 (Ala. 1996) ("This Court must interpret plain language in a statute to mean exactly what it says."); *see also Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what is says there."). The Alabama Legislature used different language to describe the remedy for a "provision" which violates the Mini-Code versus the remedy for a "creditor" who fails to comply with a requirement. Accordingly, this Court necessarily presumes that the legislature intended to provide a different remedy when a "creditor" fails to comply with a requirement.

Moreover, in cases that have discussed alleged violations of section 5-19-6, the courts have routinely held that the plaintiff's exclusive remedy was the plaintiff's actual economic damages. *See, e.g., In re Crotzer*, 147 B.R. 252, 256 (Bkrtcy. N.D. Ala. 1992) (the exclusive remedy for a creditor's failure to comply with section 5-19-6 is the actual economic damages suffered by the debtor); *Cantrell v. Walker Builders, Inc.*, 678 So. 2d 169, 172 (Ala. Civ. App. 1996) (where creditor failed to comply with section 5-19-6, the debtors were entitled to compensation for the actual damage suffered, claimed, and proved by them). Actual economic damages is the remedy provided by the second sentence of section 5-19-19(c).

In the present case, Mr. Whitt contends that the dealership failed to comply with section 5-19-6, which mandated that the dealership provide him with a copy of the Arbitration Agreement he signed. Moreover, he does not contend that any "provision" contained within the Arbitration Agreement itself violates the Mini-Code. Thus, Mr. Whitt's only available remedy is the actual economic damages suffered by him as a result of the

6

failure of the defendants, via the dealer, to provide a copy of the arbitration agreement. *See* Ala. Code § 5-19-19(c). Accordingly, Mr. Whitt cannot escape his obligation to arbitrate, for the plaintiff himself concedes that the Agreement, save his Mini-Code-based contentions, is otherwise valid. *See Plaintiff's Response in Opposition to Defendants' Motion to Compel Arbitration*, at 1-2 (non-paginated) ("... it would appear the arbitration agreement involves interstate commerce and otherwise is broad enough to encompass the claims against the dealer presented in this suit ..."); *cf. Locklear Dodge City v. Kimbrell*, 703 So. 2d 303, 306 (Ala. 1997) (holding that "a person who signs a contract is on notice of the terms therein and is bound thereby even if he or she fails to read the document").

The Court also notes that, although the movants were not signatories to the original arbitration agreement, they nonetheless have standing to compel arbitration on the authority of *Sunkist Soft Drinks v. Sunkist Growers*, 10 F.3d 753 (11th Cir. 1993), and *McBro Planning & Development Co. v. Triangle Electrical Construction Co.*, 741 F.2d 342 (11th Cir. 1984).

Finally, because the Court concludes that the Arbitration Agreement is valid, the defendants' motions to stay the proceedings and to compel arbitration will be granted.[2]

---

[2] Because the Court concludes the defendants' motions to compel arbitration are valid and will be granted, any actual economic damages available to the plaintiff under section 5-19-19(c) are to be ascertained by the arbitrator(s).

7

## III. Conclusion.

Accordingly, the defendants' motions to stay the proceedings and to compel arbitration will be granted. The Court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __30th__ of June, 1998.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE